UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **BYRON SIMMONS** | **CIVIL NO. 3:20-CV-01309** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **RICKEY A. JONES, ET AL.** | **MAG. JUDGE KAYLA MCCLUSKY** |

RULING

Pending before the Court is a Motion in Limine/*Daubert* Motion [Doc. No. 26] filed by Defendants Ricky A. Jones, individually and in his official capacity as the Tensas Parish Sheriff, and Pat W. Smith, individually and in her official capacity as Warden of the Tensas Parish Detention Center ("TPDC") (collectively "Defendants"). Plaintiff Byron Simmons ("Simmons") opposes the motion [Doc. No. 29].

For the following reasons, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

    **I.**    **FACTS AND PROCEDURAL HISTORY**

This case arises from an accident which occurred on October 9, 2019, at the TPDC. Simmons, a state prisoner being incarcerated at the TPDC, was working in the kitchen, cooking rice in a large pot on what is referred to by the parties as a "tilt grill." Simmons was wearing rubber boots of the style sometimes called "shrimp boots." Simmons asserts that a mixture of water and oil was boiling in the pot when the tilt grill collapsed, sending hot scalding water down his leg and into his boot, where it was trapped, causing him to sustain severe 2nd and 3rd degree burns.

Simmons was initially treated at the Franklin Parish Medical Center ("FPMC"). Simmons alleges that the physicians at FPMC twice recommended that he be treated at the burn center at

either Jackson, Mississippi or Shreveport, Louisiana. Simmons further alleges that the authorities at TPMC never scheduled an appointment for him to be seen, evaluated, and treated at a burn center, which resulted in him being left with a permanently deformed foot.

On October 7, 2020, Simmons filed this lawsuit, asserting claims under Title 42 United States Code § 1983, and the Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. He also asserts claims under state law. Simmons alleges that he was in need of specialized medical treatment and care, but Defendants refused to authorize any treatment outside of TPDC. Simmons states that he suffered pain on a daily basis, but Defendants ignored and refused his needs for specialized treatment and wound care. He alleges that Defendants were deliberately indifferent to his medical needs.

On January 6, 2022, Defendants filed the pending Motion in Limine/*Daubert* Motion seeking to limit the testimony of Plaintiff's expert, Dr. Richard Willner, a podiatrist, in eight different respects. Simmons has filed an opposition [Doc. No. 29].

The motion is fully briefed, and the Court is prepared to rule.

**II.     LAW AND ANALYSIS**

Under Federal Rule of Evidence 702, an expert opinion on scientific, technical, or specialized knowledge can be admitted only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. When faced with expert testimony, the court must determine at the outset if the proponent of the evidence has proven its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592 n.10 (1993) (citing FED. R. EVID. 104(a) and *Bourjaily v. U.S.*, 483 U.S. 171, 175-76 (1987)). Courts have considerable discretion in deciding whether to admit or exclude expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-9 (1997).

However, as gatekeeper, the district court is not intended to replace the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore Cty, Miss.,* 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert,* 509 U.S. at 596).

In determining whether to allow expert opinion testimony, a court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. *See Moore v. Ashland Chemical, Inc.,* 126 F.3d 679, 684 (5th Cir. 1997). A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a particular subject. *Wilson v. Woods,* 163 F.3d 935 (5th Cir. 1999).

If a witness is qualified to testify, the court must then determine whether the proffered testimony is both relevant and reliable. Reliability and relevance, under Rule 702, are the hallmarks of admissible expert testimony. *Daubert*, 509 U.S. at 589; *In re MBS Mgmt. Servs.,*

3

*Inc.*, 690 F.3d 352, 357 (5th Cir. 2012). In making its reliability determination, the court must assess whether the "reasoning or methodology underlying the testimony is scientifically valid." *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999). However, the focus of reliability "must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595.

Relevance includes not only the general requirement contained in Rule 401 that the testimony tend to make the existence of any fact more probable or less probable, but also the prerequisite that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 702[02], p. 702-18 (1988)). In assessing relevance, courts "must determine whether that reasoning or methodology can be properly applied to the facts in issue." *Id.* (citing *Daubert*, 509 U.S. at 592-93).

Ultimately, "[t]he district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002) (quoting *Kumho Tire Co.*, 526 U.S. at 152).

The Court will address Defendants' contentions in the order set forth in their motion.

### A. The Standard of Care as to the Defendants

First, Defendants move to limit Dr. Willner's statements and commentary regarding the standard of medical care inasmuch as it is directed to the Defendants. Defendants argue that Dr.

4

Willner's conclusion that the medical care and treatments delivered to Simmons fell below the standard of care of a reasonable podiatrist or physician practicing in Louisiana is inapplicable to the Defendants because neither Defendant, nor either's employees or subordinates, are physicians or podiatrists. Defendants contend this opinion is irrelevant and therefore fails the admissibility test under Rule 702.

In response, Simmons acknowledges that Defendants are not physicians or podiatric surgeons, but he argues that the point of Dr. Willner's opinion is that TPDC's failure to transport Simmons to the burn center effectively rendered the medical care delivered to him to be substandard. This is especially true, according to Simmons, because the treating physicians at FPMC recommended that he be sent for treatment at a burn center forthwith.

Dr. Willner concluded:

> My review of Mr. Simmons' charts and my personal examination of his foot causes me to opine to a reasonable medical certainty that the medical care delivered to Mr. Simmons was; (a) below the Standard of Care of a reasonable podiatrist or physician practicing in Louisiana; (b) the treatments provided to Mr. Simmons cause him to needlessly suffer severe and unnecessary pain; (c) that Mr. Simmons will be left with a life-long deformity to his right foot that would not be as severe as he currently presents had proper treatment been rendered during his confinement at Tensas Parish Detention Center;(d) I find it unconscionable that after the physician at Franklin Medical Center recommended that Mr. Simmons be treated at the burn center in Jackson, Mississippi that Tensas Parish Detention Center did not act on said recommendation; and (e) Mr. Simmons is left with a permanent deformity to his right foot resulting from the inadequate medical care provided to him.

[Doc. No. 26-2, p. 28].

The central issue is whether Simmons' rights were violated by virtue of his not being provided specialized medical treatment, i.e. by Defendants not taking him to a burn center. Therefore, Dr. Wellner's testimony is clearly relevant. Accordingly, to the extent Defendants object to his testimony on the grounds of relevance, the motion is **DENIED**.

Defendants additionally object that Dr. Willner's opinions regarding the administration of narcotics in a correctional setting is inadmissible because there is no evidence of his expertise or experience in practicing correctional medicine. They further object that he does not support this opinion with any scientific argument or analysis of the prevailing standard of care in prisons.

Simmons states that Dr. Willner is a graduate of the Temple University School of Podiatric Medicine, was awarded the degree of Doctor of Podiatric Medicine, is licensed to practice podiatry in this state, and has so practiced for more than 30 years. The Court finds that Defendants have not established that Dr. Willner lacks the requisite expertise regarding the administration of narcotics in a correctional setting. Accordingly,

**IT IS ORDERED** that, to the extent Defendants object to Dr. Willner's testimony on the grounds of relevance, the motion is **DENIED**. Additionally, to the extent Defendants object to Dr. Willner's opinions regarding the administration of narcotics in a correctional setting, the motion is **DENIED**.

### B. Statements and Commentary Regarding Deliberate Indifference and Negligence

Defendants assert that Dr. Willner should be precluded from testifying as to both "deliberate indifference" and "negligence," because expert witnesses cannot offer legal conclusions. Simmons concedes that Dr. Willner may not opine on legal conclusions but contends that Dr. Willner may testify as to the deficient medical treatments rendered Simmons.

6

Expert witnesses cannot offer legal conclusions. *See Fed. R. Evid. 704*; *also see Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009). Rather than aiding the jury in making a decision, such testimony improperly usurps both the role of the Judge in instructing the jury on the law, and the role of the jury in deciding the result of the case. *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005*); see also Burkhardt v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact....").

"Deliberate indifference" is a legal standard. *See Stewart v. Murphy*, 174 F.3d 530, 541 n.9 (5th Cir. 1999). Of course, "negligence" is as well. An expert may not testify that a legal standard has been satisfied.

Dr. Willner's opinions and various statements regarding "deliberate indifference" and "negligence" thus constitute impermissible legal conclusions that are not admissible. Accordingly,

**IT IS ORDERED** that, to the extent Defendant move to preclude Dr. Willner from testifying as to both "deliberate indifference" and "negligence," the motion is **GRANTED**, and that testimony is **EXCLUDED**.

    **C.**    **Omission of the Word "Oil"**

Defendants move to exclude Dr. Willner's statements and commentary regarding the omission of the word "oil" from Willie Webb's report, and Dr. Willner's statements and commentary that the omission somehow evidences purposeful indifference or negligence.

Correctional Officer Webb prepared an October 9, 2019 Unusual Occurrence Report wherein he wrote that "boiling water" from a tilt skillet spilled into Simmons' boot causing the

7

injury. Dr. Willner states that, two years later, Simmons told him there was also some oil in the skillet. Defendants assert that Dr. Willner then made two inappropriate and inadmissible assumptions. First, he assumes that there was oil in the skillet, which is a disputed fact. Second, he assumes that Webb had information that there was oil in the skillet but was purposefully indifferent and negligent in omitting that in the report. Defendants contend that Dr. Willner has no qualifications to express an opinion that Officer Webb was purposefully indifferent and negligent, because a correctional officer is not a medical professional.

Simmons acknowledges that Dr. Willner opines that oil was in the pot because Simmons told him so, and Simmons does not dispute that the presence of oil is a disputed fact. Further, Simmons acknowledges that Dr. Willner's opinion that Officer Webb was purposely indifferent and negligent is outside the realm of Dr. Willner's expertise and can be excluded. Accordingly,

**IT IS ORDERED** that to the extent Defendants move to exclude Dr. Willner's statements and commentary regarding the omission of the word "oil" from Willie Webb's report, and Dr. Willner's statements and commentary that the omission somehow evidences purposeful indifference or negligence, the motion is **GRANTED**, and that testimony is **EXCLUDED**.

### D. The Temperature of the Liquid Substance

Defendants move to exclude Dr. Willner's statements and commentary as to the temperature of the liquid substance that burned Simmons' foot. Dr. Willner states in his report that the scalding water/oil mixture is much hotter, resulting in a more severe burn. Defendants submit that Dr. Willner has no idea what the temperature of the liquid substance was at the time of the burn. They contend that Dr. Willner is free to opine, if he has the expertise, as to whether an oil/water mixture is capable of causing a burn such as he describes in his report; however, he does

not know and cannot state that the liquid substance at issue was an oil/water mixture of a known temperature.

Simmons responds that Dr. Willner can state that water boils at 212 degrees and that it boils at a higher temperature if oil is added to it.

The Court finds that any testimony by Dr. Willner that the liquid substance at issue was an oil/water mixture of a known temperature is speculative and subjective. Accordingly,

**IT IS ORDERED** that, to the extent that Defendants move to exclude Dr. Wellman's testimony that the liquid substance at issue was an oil/water mixture of a known temperature, the motion is **GRANTED**, and that testimony is **EXCLUDED**.

### E. Statements and Commentary regarding Tilt Cooking Surface and Appropriate Shoe Gear

Defendants move to exclude Dr. Willner's statements and commentary regarding the "tilt cooking surface," its condition, or "appropriate shoe gear." Defendants assert that Dr. Willner makes biased, prejudicial statements wholly outside of the arena of podiatry when he begins discussing the tilt skillet at issue, its condition, and the kind of shoes Simmons should have been wearing while working with it. Defendants further assert that, although Dr. Willner is a doctor, he has not been offered as an expert in tilt skillets, kitchen management, or correctional facilities. Therefore, any opinions he may or may not have regarding tilt skillets, their maintenance, or the kinds of shoes one should wear while operating them in a prison setting are outside the scope of his proffered expertise and thus constitute inadmissible speculation or subjective belief. Defendants submit that he should be excluded from discussing these subjects in their entirety.

Simmons responds that the discipline of podiatry is limited on the human body to be from the ankle to the sole of the foot. He states that podiatric surgeons are very experienced with the

9

human foot and all of its mechanics, pathology and the effects of trauma. Therefore, while Dr. Willner is not an expert on "tilt grills", "kitchen management" or "correctional facilities", he is an expert on feet. Thus, he should be allowed to testify that he has treated many traumatic foot cases and to express his opinions on what are the best types of protective footwear. Simmons concludes that those topics clearly fall within the bailiwick of his profession and should be admissible.

Dr. Willner is obviously not an expert on tilt grills or kitchen management. Accordingly,

**IT IS ORDERED** that, to the extent Defendants move to exclude Dr. Willner's statements and commentary regarding the "tilt cooking surface," its condition, or kitchen management, the motion is **GRANTED**, and that testimony is **EXCLUDED**.

However, as a podiatrist, Dr. Willner is qualified to express an opinion as to the appropriate protective footwear in a kitchen setting. Defendants can challenge his testimony through cross examination. Accordingly,

**IT IS FURTHER ORDERED**, that to the extent Defendants move to exclude Dr. Willner's testimony as to the appropriate protective footwear in a kitchen setting, the motion is **DENIED**.

   **F.**  **Statements and Commentary Regarding Prisoner Status**

Defendants move to exclude Dr. Willner's statements and commentary regarding the use of the term "Offender Simmons" and his references to Simmons as "literally a prisoner with no power." Defendants state that Dr. Willner appears to be offended that Simmons is refered to as "Offender Simmons" in the jail's records. For example, Dr. Willner writes:

> Referring to Mr. Simmons as 'Offender Simmons' might be usual
> with prison employees, but it is demeaning to a person in

10

> rehabilitation, and it leads to dehumanization. It is very easy to be dismissive. Words have meaning.

[Dr. Willner Report, Doc. No. 26-2, p. 2]. Dr. Willner also refers several times to Simmons as "literally a prisoner with no power." [*Id*, p. 4 and repeating throughout]. Defendants assert that, regardless of Dr. Willner's views on this issue, these opinions fall wholly outside of his proffered area of expertise, podiatry; are irrelevant; and should be excluded as merely subjective belief or unsupported speculation, which makes them unreliable under Rule 702.

Simmons responds that, unfortunately, this attitude permeates throughout what some have called the prison industrial complex, denigrating prisoners as a lower form of humanity. He states that Fyodor Dostoyevsky famously wrote that "the degree of civilization in a society can be judged by entering its prisons" [quoting from *The House of the Dead*.]. Simmons asserts that if it had been a prison employee who sustained this injury, he would not have been denied a trip to the burn center. He further asserts that Dr. Willner's commentary is germane to the particular facts of the present case, particularly to the question of deliberate indifference. He concludes that the commentary is relevant to the ultimate issues at trial.

The Court finds that these commentaries and opinions fall wholly outside of Dr. Willner's proffered area of expertise and are prejudicial and irrelevant. Additionally, they are merely subjective belief and unsupported speculation. Accordingly,

**IT IS ORDERED** that, to the extent Defendants seek to exclude Dr. Willner's statements and commentary regarding the use of the term "Offender Simmons" and his references to Simmons as "literally a prisoner with no power," the motion is **GRANTED**, and that testimony is **EXCLUDED**.

### G.  Statements and Commentary Questioning other Witnesses Veracity.

Defendants move to exclude Dr. Willner's statements and commentary questioning the veracity of other witnesses. Defendants state that, at various times throughout his report, Dr. Willner opines that the nurses' notes are "miraculous" "regurgitated," and "impossible." [*Id*., p. 4 and repeating]. Defendants contend that the TPDC nursing staff are fact witnesses in this matter, and Dr. Willner is not permitted to testify specifically as to their credibility because their credibility is to be determined by the jury, citing *Henson v. Odyssea Vessels, Inc*., No. 07-613, 2008 WL 449726, at *2 (E.D. La. Feb. 15, 2008). Defendants therefore seek to exclude Dr. Willner from addressing their credibility in such a prejudicial and biased manner, and to limit his testimony to the contents of the records and his medical opinions relating thereto.

Simmons responds that Defendants are simply picking out words but do not address the context in which those words were written. Simmons states that Dr. Willner is pointing out that many of the chart entries are exact duplicates rather than individualized charting, so in effect they are regurgitated. Simmons states that Dr. Willner is merely asserting that the charting was inadequate and unacceptable and not likely to lead to continuity of health care. Simmons contends that unindividualized chart entries are in fact relevant to the ultimate issues in the case. Simmons concludes that the jury is well able to determine whether or not Dr. Willner is a credible witness and if his words are an accurate reflection on the charting.

The Court finds that, although Dr. Willner is allowed to express his opinions in the area in which he is qualified as an expert, he is not allowed to attack the credibility or veracity of other fact witnesses, especially in such an insulting, derisive, and offensive manner.

"While expert testimony may be used to 'assist the trier of fact to understand the evidence or to determine a fact in issue,' Fed. R. Evid. 702, an expert witness may not usurp the jury's function to weigh evidence and make credibility determinations." *United States v. Farrell*, 563 F.3d 364, 377 (8th Cir. 2009).   Accordingly,

**IT IS ORDERED** that, to the extent Defendants seek to exclude Dr. Willner from making statements and expressing commentary addressing the credibility and veracity of other witnesses, the motion is **GRANTED**, that testimony is **EXCLUDED**, and Dr. Willner is **LIMITED** to testifying as to the contents of the records and his medical opinions relating thereto.

### H.     Unnecessary and Biased Statements and Commentary

Defendants move to exclude Dr. Willner's allegedly unnecessary and biased statements and commentary found throughout the report. Defendants state that Dr. Willner unnecessarily uses prejudicial language, referring to the TPDC staff and even other treatment providers as, amongst other things, "callous," "insensitive," and "inhumane." [*Id*., pp. 25, 26]. Defendants further state that, in contrast, he refers to Simmons' injuries in the most grave and serious of tones and calls his treatment "unconscionable." [Id., p. 28]. Defendants quote from *Shawler v. Ergon Asphalt & Emulsions, Inc*., "[m]uch of [this] report reads more like proposed findings of fact favorable to [Plaintiff] than an expert's reliable application of specialized knowledge to the facts of the case." No. 15-2599, 2016 WL 1019121, at *11 (E.D. La. Mar. 15, 2016), *aff'd sub nom. Shawler v. Big Valley, L.L.C*., 728 F. App'x 391 (5th Cir. 2018). Defendants conclude that Dr. Willner's prejudicial and biased adjectives and descriptors are irrelevant, and Defendants therefore seek to exclude him from expressing them before the jury at the trial of this matter.

Simmons responds that, taken out of context, these words may appear to be prejudicial or

13

conclusory, but they are merely hyperbole used for emphasis to criticize the medical care provided to him. Simmons states that, in essence, the words are simply an emphatic criticism of the health care provided to him and therefore should be admissible.

The Court finds that the hyperbolic language used by Dr. Willner throughout his report is irrelevant and of no help to the jury. "'If an expert's testimony does nothing more than attorneys can do in final arguments, it is not admissible because it is providing not knowledge, but mere opinion and advocacy.'" *Cage*, 979 F. Supp. 2d. 787, 835 (quoting David H. Kaye, David E. Bernstein and Jennifer L. Mnookin, *The New Wigmore: A Treatise on Evidence: Expert Evidence*, § 2.1.2). Accordingly,

**IT IS ORDERED** that, to the extent Defendants move to exclude Dr. Willner's prejudicial and biased adjectives and descriptors, the motion is **GRANTED**, and such testimony is **EXCLUDED**.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion in Limine/*Daubert* Motion [Doc. No. 26] is **GRANTED IN PART** and **DENIED IN PART**.

MONROE, LOUISIANA, this 14th day of February 2022.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**